## FAMBRO v. GANTT.

1. No title passes to the purchaser, by a *private* sale of the property of an estate by the administrator, although the administrator is estopped by his own act from recovering it, by an action in his own name. Nor can the administrator coerce payment of the purchase money, as no right can be derived from an unlawful act; and the contract being void in its inception, the defence may be made, without placing the other party *in statu quo*, by a return of the property.

Writ of Error to the County Court of Dallas.

This was an action of assumpsit at the suit of the defendant in error. The first count alledges that the defendant, in consideration that the plaintiff would execute to James H. Fiffe a bill of sale for certain negroes, particularly designated, being the mother and her children, and the family of one Lawson Thomas, and the property of the plaintiff, promised to pay to the plaintiff on the execution of the bill of sale, the sum of $475. It is then averred that the bill of sale was executed, and together with the slaves delivered to the defendant, &c.

The second count charges, that the defendant having in his possession for collection, as an attorney at law, certain notes due to James H. Fiffe from the estate of Samuel M. Gantt, deceased, of whom the plaintiff and Sarah Gantt were administrator and administratrix, proposed to the plaintiff, that if he would execute a bill of sale to Fiffe for certain slaves, whose names are mentioned—being the mother and her children, the family of Lawson Thomas, and the property of the plaintiff, then he, the defendant, would pay to the plaintiff the further sum of $475. The execution of the bill of sale, and the delivery of the slaves, are averred as above.

It is stated in the third count, that Lawson Thomas was indebted to the plaintiff in the sum of $475, for property before that time sold and delivered him; and the defendant having in his possession funds belonging to Thomas suffi-

cient to pay that sum, in consideration that the plaintiff would execute to James H. Fiffe a bill of sale for certain slaves, described as in the preceding counts, he, the defendant, promised to pay to the plaintiff, on the execution by the latter of a bill of sale for these slaves to Fiffe, the further sum of $475, that being the amount due and owing to the plaintiff by Lawson Thomas. The court then avers the execution of the bill of sale, and the delivery of the same with the slaves embraced by it as in the preceding counts—deduces thence the liability of the defendant, and his promise to pay, &c. To each of these counts the defendant demurred *severally*, and his demurrer being overruled, he pleaded —1. Non-assumpsit. 2. Want of consideration. 3. Failure of consideration. 4. The statute of frauds. On each of these pleas an issue was joined, and the cause submitted to a jury, who returned a verdict for the plaintiff, and judgment was rendered accordingly.

From a bill of exceptions sealed at the defendant's instance, it appears that defendant, as attorney for James H. Fiffe, held for collection certain notes made by Samuel Gantt, deceased, of whose estate the plaintiff and Sarah Gantt were administrator and administratrix; the aggregate amount of these notes was about $2100. It was agreed by the plaintiff, upon the proposition of the defendant, that the former should settle the notes by selling to Fiffe the family of negroes described in the declaration. While the transaction was in the progress of consummation, the plaintiff objected to going on with it, stating that one Lawson Thomas, a free negro, who was the husband of the woman and father of the children about to be sold, owed him $475, and he feared he would not be able to collect it of him, if he allowed his wife and children to go—that being the only hold on him. Lawson being present, admitted that he owed the plaintiff the sum stated. The defendant then said to the plaintiff that he had Lawson's effects in his hands, and if the bill of sale was executed, he would see the debt paid; plaintiff said that would not do, but defendant must say *he would* pay it. To which the defendant assented, adding, "I have the money in my pocket, and will pay as soon as you make the bill of sale." The plaintiff then executed the bill of sale, and handed it to

the defendant; the defendant then receipted the notes, and left them on the table. Plaintiff then demanded the $475, to which the defendant replied that he did not know so well about that—plaintiff then remarked that he could and would endeavor by law to make him pay, and the defendant answered that he could try it. After this conversation, and on the same day, the defendant took one of the slaves home with him, and on the next day the others were sent to him. In a deposition of the witness who narrated in open court the above facts, which had been previously taken, it was stated that at the time of the defendant's refusal to pay the $475, all the papers were lying on the table; and that she did not see, hear or know of any discharge or acquittance of Lawson from the payment thereof.

The slaves referred to belonged to the estate of the intestate, Samuel Gantt, of which the plaintiff and the witness were the representatives, as stated above. There was no evidence of their sale at auction, or under the authority of the orphans' court, though the plaintiff was to take them at their value, which had been returned to that court—was in possession of them and claimed them as his own.

There was no evidence that the defendant had any effects of Lawson in his hands, except as above stated. On the evening of the day on which the bill of sale was executed, the plaintiff sent to the person having charge of a tin box of Lawson's, which contained some notes and accounts of the latter, for the most part, if not entirely valueless, to inquire of Lawson's ability to pay, and Lawson procured the box and went off in the direction of the plaintiff's house.

After all the foregoing had taken place, the plaintiff spoke to Lawson about paying him some money—how much or on what account, witness could not state, and said to Lawson if he did not pay it he would kill him, or words to that effect.

The defendant acted in the purchase of the slaves as the attorney or agent of Fiffe, to whom the bill of sale was taken—and there was no evidence that he transcended his authority. A witness who stated that he was the agent and guardian of Lawson, testified that he did not know of any of the effects of Lawson having gone into the defendant's

Fambro v. Gantt.

hands, and if any had been received by him, he thinks he should have known it. The bill of sale recited as its consideration, the payment to the plaintiff of $2073 by Fiffe, who purported to be the purchaser. There was no proof that any one interested in the slaves ever objected to the sale of them by the plaintiff, that Fiffe had ever been disturbed in the enjoyment of the property, or that he was dissatisfied with his title, or demanded a better one.

The court charged the jury as follows: 1. If Lawson owed the plaintiff.$475, and the defendant proposed to the plaintiff to purchase from him the family of negroes embraced by the bill of sale, and the condition upon which the latter acceded to the proposition was, that besides receipting for and delivering up the notes in favor of Fiffe, against the estate of Samuel Gantt, deceased, he (defendant) should pay him the sum of $475, the amount of Lawson's indebtedness, and to this the defendant assented, and promised payment, upon the sale being consummated by the execution of a bill of sale ; and thereupon the plaintiff, upon the faith of that promise, made and delivered such bill of sale, then the undertaking of the defendant was an original promise, and was not under the statute of frauds such a contract as should necessarily be in writing, in order to impart to it validity.

2. The defendant prayed the court to charge the jury, that if the negroes referred to, belonged to the intestate's estate, and the plaintiff was one of the administrators of that estate, then he had no right to take them at the appraised value, or to sell them otherwise than at a public sale ; and a sale otherwise made by the plaintiff to Fiffe was illegal, and did not constitute a good consideration for the defendant's promise ; and if no other consideration was shown, they should find for the defendant. This prayer was denied ; and the jury were charged, that as between the parties to this suit, if the proof showed, that at the time of the sale the plaintiff was in possession of the slaves, claiming and treating them as his own, and sold them as such, the sale would constitute a good consideration for the defendant's promise.

3. The defendant also prayed the court to charge the jury, that if at the time of the sale, the slaves belonged to the estate of the intestate, the plaintiff had no right to sell them

at private sale to Fiffe, and if the promise of the defendant to pay the four hundred and seventy-five dollars was made in consideration of plaintiff's making such sale, or executing the bill of sale under the circumstances, then the consideration was not sufficient to support the promise. This prayer was denied.

4. The defendant further prayed the court to charge the jury, that if the defendant did promise to pay the $475, yet to be binding on the defendant, the promise should be supported by a sufficient consideration moving to him; and that if the promise was verbal, it should appear that the original debtor was discharged, and there was a new consideration. This prayer was also denied.

5. The defendant then asked the court to charge the jury, that, if the promise to pay the $475 dollars was to pay out of the effects which he had of Lawson, and it was shown that such effects were worthless, or insufficient, there could be no recovery against the defendant beyond the value of such effects. This charge was refused on the ground that it was abstract—there being no proof that the promise was thus qualified, but the evidence showed an undertaking to pay the full amount of the $475, with an assertion that he had the money in his pocket, and would pay as soon as the bill of sale was executed.

6. The defendant also prayed the court to charge the jury, that he had the right any time before the consummation of the contract, to retract his promise as to the $475, and if he did so before the delivery of the negroes, the plaintiff could not recover. This prayer was denied, and the jury were instructed that the defendant could have retracted previous to the consummation of the contract, but the contract was perfected by the execution and delivery of the bill of sale, and without a delivery of the slaves.

To the refusals to charge as prayed, and to the charges given, the defendant excepted, and now assigns for error the overruling of his demurrer to the declaration, and the rulings of the court, as shown by the bill of exceptions.

G. R. EVANS and W. HUNTER, for plaintiff in error, made the following points : 1. The several counts of the declara-

Fambro v. Gantt

tion do not alledge a sufficient consideration to support the supposed promise of the defendant. 2. If the promise of the defendant was to pay in consideration of the sale of the negroes, and the execution of the bill of sale, the court should not have charged that the execution of the bill of sale entitled the plaintiff to recover. 3. The promise is within the statute of frauds ; because it was not in writing, and supported by a consideration. [Nelson v. Boynton, 3 Metc. R. 396 ; McKenzie v. Jackson, 4 Ala. Rep. 230 ; Puckett v. Bates, Id. 390 ; Hester v. Wesson, 6 Id. 415 ; Brown v. Barnes, Id. 694.] 4. The sale of the property of the intestate by his administrator, at private sale, and without an order of court, is unauthorized, and passes no title to vendee. [Weir v Davis & Humphries, 4 Ala. 442; Dearman v Dearman, Id. 521 ; Clay's Dig. 223, § 13.] Such a sale is contrary to the statute, in violation of public policy, and a promise founded on it is void. [Story on Con. §§ 137, 139, 218, 220 ; Wheeler v. Russell, 17 Mass. 258, 281; Warren v. M. Ins. Co. 13 Pick. Rep. 518 ; White Franklin Bank, 22 Id. 181; Atlas Bank v. Nahant Bank, 3 Metc. Rep. 581 ; Williams v. Woodman, 8 Pick. Rep. 78 ; Carrington v. Caller, 2 Stew't Rep. 175 ; Black & Manning v. Oliver, 1 Ala. Rep. N. S. 449 ; O'Donnell v. Sweeny, 5 Id, 467.]

5. To take the case out of the statute of frauds, there should not only have been a consideration, but the original debtor should have been discharged. [Jackson v. Rayner, 12 Johns. Rep. 291; Simpson v. Patton, 4 Id. 222 ; Tillotson v. Nettleton, 6 Pick. Rep. 509 ; Watson v. Randall, 20 Wend. Rep. 201 ; Anderson v. Davis, 9 Verm. Rep. 136 ; Sinclair v. Richardson, 12 Ib. 33 ; Simpson v. Nance, 1 Spear's Rep. 4, Matson v. Wharam, 2 T. Rep. 80 ; Carlow v. Moss, 1 Bailey's Rep. 14 ; Rogers v. Collier, 2 Id. 581.] 6. The charge that was denied on the ground that it was abstract, should have been given—it affirmed the law correctly, and was warranted by the facts. [McKenzie v. Jackson, 4 Ala. Rep. 230.] 7. The defendant might have retracted his promise any time before the contract was consummated, and the proof shows that he did so. [Story on Con. § 83 ; Mactier v. Frith, 6 Wend. Rep. 103 ; Bruce & Bruce v. Pearson, 3 Johns. Rep. 534 ; Tuttle v. Love, 7 Johns. Rep. 470.]

G. W. GAYLE, for the defendant in error, made the following points : 1. The declaration is good. The law which governs a subsequent promise to pay the debt of a third person will be found in the following cases. The declaration conforms to it. [McKenzie v. Jackson, 4 Ala. 230; Hester v. Wesson, and Brown v. Barnes, 6 Ala. 415 and 694; Leonard v. Vredenburgh, 8 J. R. 31, top page; Meech v. Smith, 7 Wend. 315, (analogous,) General Principle by Kent, 3 Kent, new ed. 122.] 2. The subsequent promise of Fambro was an original undertaking. 3. If the property sold to Fiffe, through Fambro his agent and attorney, belonged to the estate of Samuel Gantt, of which plaintiff below was administrator, Fambro having taken plaintiff's individual bill af sale for the same, regarded him as the owner, and never having returned the negroes, he is estopped from denying the ownership of Gantt, the vendor. See Shattuck v. Gregg, 23 Pick. 88; Smith v. Cudworth, 24 ib. 196; Beersley v. Hamilton, 15 ib. 40; Robertson v. Mansfield, 13 ib. 139; Riley v. Million, 4J. J. Marsh. 395; Hayle v. McCoy, 7 J. J. Marsh. 138; Riley v. Million, 1 Dana, 359; Bush v. Whitney, Washburn's (Ch.) Digest, 312, § 19; Worthington, et al. v. McRoberts, et al. 7 Ala. R. 814. 4. It was not necessary that the original debtor be discharged. This is only necessary where there is no new consideration. [Fairley v. May, 4 Cowan, 432; Cleveland v. Farley, 9 ib. 639; Rogers et al. v. Kneeland, 13 Wend. 115.] Where there is no new consideration, the original debtor should be discharged, (to take the case out of the statute,) in order to make it a case of harm to the promisee. 5. A delivery of the negroes not necessary to the consummation of the contract. The bill of sale was sufficient. [Starke v. Kenan's ex'rs, 6 Ala. Rep. 773.] If the promise is upon a new consideration, it is not necessary to be in writing. [15 Pick. 166; 27 Mass. Rep. 122; 7 Har. & J. 391; 5 Greenl. 81.]

COLLIER, C. J.—By the common law, an administrator was authorized to sell the personal estate of his intestate, when in his opinion the interest of those concerned, required it; and a purchaser from him, it is said, would only be held responsible when charged with notice of a *devastavit*. [Colt

v. Lanier, 9 Cow. R. 321; Brannan, et al. v. Oliver, 2 Stew. R. 47.] Our statutes, however, have materially modified the common law, and restricted the powers of the administrator in this respect.

The act of 1809, "concerning the duty of executors, administrators and guardians," &c. (Clay's Dig. 223, § 13), inhibits an administrator, &c. from taking any part of the estate represented by him at its appraised value, or from disposing of the same at private sale, except where the same is authorized by a will of the testator. "But in all cases where it may be necessary to sell the whole or any part of the personal estate of any testator or intestate, it shall be the duty of the executor, administrator or guardian, to apply to the orphans' court of their county, for an order of sale, and upon obtaining the same, to advertise the time and place of such sale, in three or more public places in their county, at least thirty days previous to the day of sale, and then and there proceed to sell the same, at public sale, to the highest bidder, giving at least six months' credit, the purchaser giving bond with approved security."

Under this statute, it was held by the supreme court of the United States, that a private and unauthorized sale by an administrator in chief, did not have the effect to defeat the right of a subsequent administrator *ad colligendum.* [Ventris v. Smith, 10 Pet. Rep. 161.] This decision is cited with approbation in Weir v. Davis and Humphries, 4 Ala. Rep. 442. In the latter case we held that a sale made otherwise than the law provided, was invalid, and that the property illegally sold, might be subjected to the claims of creditors, or the distributees of the estate.

In Dearman v. Dearman and Coffman, 4 Ala. Rep. 521, the validity of a private sale by an administrator was considered; and it was there said: "We will not inquire whether some portions of the act regulating the sale of the estates of deceased persons may not be directory merely, because here the sale (if indeed it can be called one) was without any order of court directing a sale to be made, and it was made *privately.* This the statute declares *unlawful,* and certainly no right can be derived from an unlawful act." "If then there had been

39

an actual sale made of the slaves in question to the plaintiff by the administratrix *privately,* and a full consideration paid, the title would not have passed as against the heirs, distributees or creditors." Under the influence of the same statute, it was decided in Cable v. Martin, 1 How. Rep. Miss. 558, and in Baines v. McGee, 1 S. & Mar. Rep. 208, that executors and administrators can only sell the property of the decedent in the mode prescribed by law; a *private sale* passes no title, and the vendee acquires no title to the property against the distributees. See also Worten v. Howard, 2 S. & Mar. Rep. 527; Edmundson v. Roberts, 2 How. Rep. Miss. 822; White v. Beard, 5 Ala. Rep. 94. As to the right of a purchaser under a void sale by an executor or administrator, to resist the payment of the purchase money, while he retains the uninterrupted possession of the property, see Wiley & Gayle v. White & Lesley, 3 Stew. & P. Rep. 355; Planters' Bank v. Johnson, 7 S. & Mar. Rep. 449. We do not deem it necessary in the case before us, to inquire what is the general rule upon this point; for the invalidity of the sale by the plaintiff to the defendant, is a palpable sequence from the fact that it was *private,* and *without an order of court.* The cases cited conclusively settle this point, and establish that the defendant acquired no title by his purchase, though the plaintiff himself may be estopped by his act from recovering the slaves in an action in his own name. [Pistole v. Street, 5 Porter's Rep. 64.]

If the sale was *unlawful,* because the statute so declared it, and passed no title to the vendee, it may be asked if it imposed a liability upon him to pay the purchase money? Certainly the plaintiff cannot coerce its payment, if, as was said in Dearman v. Dearman and Coffman, "no right can be derived from an unlawful act."

Even if it were not allowable for the defendant to prove the illegality of the consideration for his promise to pay the debt of Lawson Thomas, the plaintiff could not make out his case without proving it; for a promise without any consideration, would be a mere *nudum pactum,* which imposes no legal duty. And the consideration being *unlawful,* the promise which rests upon it, would be unsupported, and cannot be enforced.

The contract of the parties is opposed to public policy as declared by the statute, and to entitle the defendant to resist a recovery, it was not necessary that he should have returned the slaves to the plaintiff. In Carrington v. Caller, 2 Stewt. Rep. 175, 197, it was said, "that in relieving against a contract denounced by the policy of the law, the relief is not afforded with a view to favor the defendant, but to discourage contracts which restrain or oppose the policy of the law; therefore, those principles of justice, by the application of which individual rights are settled, are not permitted in such cases to have a controlling influence. In Holman v. Johnson, 1 Cowp. Rep. 341, Lord Mansfield says, that it is not in favor of the parties that the objection is ever allowed, but it is founded on the principle of public policy, *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an illegal or an immoral act. If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of the positive law of the country, there the court say he has no right to be assisted." After citing with approbation, Mitchell v. Smith, 4 Dallas' Rep. 269, in which the purchaser of land was permitted to avoid the payment of a promissory note given for the purchase money, though he was in possession, on the ground that the contract was against the legislation of Pennsylvania, it was added (in *Carrington v. Caller,*) "that the doctrine of *statu quo,* does not apply to a contract void in its inception for illegality, but only to one which, by some *post factum* circumstance becomes so; as if on a breach of contract by the vendor, the vendee elect to disaffirm, where it has been executed by him, either in the whole or in part, he must offer to place the vendor in *statu quo* before he can recover back the money he has paid." The view we have taken, most conclusively shows the illegality of the contract, and that the promise of which the plaintiff predicates the right to recover, is a mere nullity, and cannot be enforced. In refusing thus to rule, the county court misapprehended the law.

The objection to the declaration was directed mainly to the first count, and supposed it was bad, because it did not

alledge that the promise of the defendant was in writing. Although it may be necessary to prove on the trial that an undertaking to pay the debt of a third person was *in writing*, to relieve it from the influence of the statute of frauds, it is not necessary to alledge the fact specially in the declaration. [Kizer v. Lock, 9 Ala. R. 269.] In respect to the second and third counts, we think they substantially state a sufficient consideration, though to support the latter, it might be necessary to show, that Thomas was discharged, or that the promise was in writing. What has been said relieves us from the necessity of examining the other questions raised; and we have only to add, the judgment is reversed and the cause remanded.