## FARROW *vs.* BRAGG'S ADM'R.

[ACTION UNDER CODE ON COMMON COUNTS IN ASSUMPSIT.]

30 261
126 307

1. *Amendment of complaint.*—In an action brought by an administrator, if the complaint shows, both in its body and in the marginal statement of the parties, that he sues in his representative character, it may be so amended as to describe the cause of action with more particularity, and thus authorize a recovery by him in his representative capacity.

2. *Competency of administrator as witness.*—In an action instituted by a special administrator, who is superseded during the pendency of the suit by the appointment of an administrator in chief, if the latter is thereupon substituted as the plaintiff of record, the former is a competent witness for the plaintiff.

3. *What constitutes deposit.*—Where a slave is placed by his owner in the possession of a third person, "to take care of him, keep him until called for, and pay nothing for his hire during the time he might have him,"—this is a mere deposit, and does not amount to a contract of hiring.

4. *Liability of such bailee.*—A bailee, holding possession of a slave under a con-

tract of deposit, is not liable to the personal representative of the bailor for hire, until after demand made.

5. *Breach of contract by plaintiff defeats recovery.*—If the owner retakes the possession of his slave, before the expiration of the stipulated time of hiring, and against the objection of the hirer, he cannot afterwards recover any portion of the hire.

6. *Estoppel against administrator.*—A special administrator, who hires out the slaves belonging to his intestate's estate, is estopped, in an action to recover the hire, from setting up his own want of authority.

APPEAL from the Circuit Court of Russell.
Tried before the Hon. JOHN GILL SHORTER.

IN this case, the defendant was summoned "to answer the complaint of John D. Adair, special administrator of Zebulon D. Bragg, deceased"; and the original complaint was as follows:

"John D. Adair, special adm'r on } The plaintiff claims the estate of Z. D. Bragg, dec'd, } of the defendant $114, *vs.* } due to him as administrator as aforesaid, Robert B. Farrow. } istrator as aforesaid, from the said defendant, by account, on the 25th day of December, 1853; also, on an account stated between the plaintiff and defendant, on the said 25th December, 1853; also, for work and labor done by plaintiff for defendant, on the 24th December, 1853, for which the plaintiff claims of the defendant $114; which several sums of money, with the interest thereon, are now due."

At the trial term of the cause, as appears from the bill of exceptions, "the plaintiff suggested to the court the revocation of the letters of administration which had been granted to John D. Adair, as special administrator of the estate of said Bragg, and the appointment in his stead of one Geo. D. Smith, as administrator in chief; and asked leave to make said Geo. D. Smith the party plaintiff; which motion was granted by the court. He then asked leave to amend his complaint; which was allowed by the court, against the defendant's objection. He thereupon amended his complaint," so as to make it read as follows:

"John D. Adair, special adm'r of the estate of Z. D. Bragg, dec'd, *vs.* Robert B. Farrow. — The plaintiff claims of the defendant $114, due from him by account on the 25th day of December, 1853; also, the sum of $114, for work and labor done by the said Zebulon D. Bragg in his lifetime, for the defendant, at his request, on the 25th December, 1853; also, the sum of $114, for goods, wares, and merchandize, sold by the said Zebulon D. Bragg in his lifetime, to said defendant, on the 25th December, 1853; which said several sums of money, with the interest thereon, are now due. Also, the sum of $114, for work and labor done by the plaintiff, administrator as aforesaid, for the defendant, and at his request, on the 25th December, 1853; which sum of money, with the interest thereon, is now due."

The defendant reserved an exception to the ruling of the court allowing this amendment of the complaint.

"The plaintiff then offered said Adair as a witness, to prove the demand sued for. The defendant objected to his competency as a witness for plaintiff; the court overruled the objection, and permitted the said Adair to testify; and the defendant excepted. There was no proof that the defendant had ever been notified that plaintiff intended to establish the claim by his own oath, or by the oath of said Adair.

"The defendant then pleaded, in short by consent, *non assumpsit*, and set-off. It appeared by the testimony, that in the early part of the year 1853, and while said Bragg was in life, one Thomas F. Murphy, who was his agent, wishing to get a slave belonging to said Bragg, named Nias, out of the town of Salem, and into the country, on account of the slave's feeble health, and to keep him from getting into difficulties, placed him in the possession of the defendant, who lived in the country, under an understanding and agreement that said defendant was to take care of him, keep him until called for, and pay nothing for his hire during the time he might

have him; that Bragg himself, some short time afterwards, when informed of what Murphy had done, ratified and confirmed it; that defendant kept the slave until the close of the year, and then sent him to said Adair, who was then the special administrator of said Bragg; that Bragg died in May of that year; that neither he in his lifetime, nor his said special administrator after his death, ever called upon defendant for said slave, or made any demand, except as above stated. It further appeared from the proof, that on the day said special administrator was appointed, (which was at a regular term of the probate court of Russell,) and after his appointment, but before he had given bond and qualified, he agreed to hire to said defendant two other slaves belonging to said estate, named Jack and Ransom, until an administrator in chief should be appointed, (which the parties supposed would be done at the next term of said probate court,) at an annual hire of $8 per month; but that after the next regular term of said probate court, and before an administrator in chief was appointed, said Adair took both of said slaves out of defendant's possession, against his objection.

"The court thereupon charged the jury, that if they believed the evidence, in regard to the manner in which the defendant received and held the slave Nias, the law then made him the bailee of Bragg, and he was not chargeable with hire while said Bragg lived, and did not call for him; but that the bailment terminated upon Bragg's death, and the defendant became liable to pay his administrator reasonable hire, from that day forth until he gave him up, without the administrator calling for the slave, or demanding him from the defendant; and that a demand by the administrator was not necessary to charge the defendant with hire.

"The court further charged the jury, that if they believed the evidence, in regard to the hiring of the other two slaves by the special administrator, after his appointment, but before he gave bond and qualified; and that he took them away contrary to the wishes of the defendant, and before the time agreed upon,—yet, nevertheless, he

was entitled to recover of said defendant reasonable hire for them during the time he kept them."

The defendant excepted to these charges; and he now assigns as error all the rulings of the court to which, as above stated, he reserved exceptions.

JOHN A. LEWIS, for the appellant.—1. The original complaint showed no cause of action for which the plaintiff could recover in his representative capacity, while the amendment allowed by the court set forth a cause of action accruing to him in his fiduciary character. Consequently, the amendment should not have been allowed. Arrington v. Hair, 19 Ala. 243; Tate v. Shackelford, 24 Ala. 510. It was equivalent to striking out the name of a sole plaintiff, and substituting another in its stead.— Leaird v. Moore, 27 Ala. 326.

2. Adair was not a competent witness, because no notice had been given that plaintiff intended to establish his demand by his own oath.—Code, §§ 2313–14.

3. The defendant held possession of the slave Nias under a bailment which amounted to a gratuitous deposit only; and no time being fixed for the re-delivery, he cannot be subjected to an action at law, for either the slave or his hire, without a previous demand and refusal.— Edwards on Bailments, 83–5; 2 Kent's Com. 567; Brown v. Cook, 9 Johns. 361; 21 Vermont, 558.

4. The act of Adair, in depriving the defendant of the possession of the two other slaves before the appointment of an administrator in chief, was a violation of the contract, which deprived him of the right to recover any portion of the hire.—Petty v. Gayle, 25 Ala. 472.

CLOPTON & LIGON, contra.—1. The original complaint showed a cause of action due to the administrator in his representative character. The amendment only specified the cause of action with more particularity.

2. Adair was a competent witness when offered. He was no longer a party on the record, and was not liable for the costs; nor would the judgment in this case be evidence for him in another action.

18

3. The death of Bragg terminated the bailment under which the defendant held the slave Nias.—Edwards on Bailments, 121. He became liable for hire from that time, his only duty being to deliver the slave to the administrator.

4. Notwithstanding Adair's appointment, he did not become administrator in fact, until he had qualified and given bond as the statute requires. Consequently, his agreement with Farrow, as to the two other slaves, was not binding as a contract on the estate; and Farrow was liable for reasonable hire while he had the possession. But, even if the contract was binding on the estate, there was no violation of it by Adair, since the period contemplated by the parties for its termination was the next term of court, when they supposed an administrator in chief would be appointed.

STONE, J.—The precise question presented by the amendment of the complaint in the court below, has not been decided by this court.

In Tate v. Shackelford's Adm'r, 24 Ala. 510, the plaintiff, styling himself administrator in right of his wife of the estate of Geo. W. Hail, deceased, declared on a contract made with himself personally. Shackelford died pending the suit, and the suit was revived in the name of his personal representative. This was excepted to, and assigned as error. This court held, that the words administrator, &c., were descriptive of the person, and that the suit was properly revived. To the same effect is Arrington v. Hair, 19 Ala. 243; Gibson v. Land, 27 Ala. 117.

In the case of Tate v. Shackelford, *supra*, this court laid down the rule, that "the character in which a party sues must be determined, not from the description of himself which he gives in the caption of the declaration, but from the body of the pleading." That suit was commenced before the Code went into operation, and under the law as it then existed. We are satisfied with the rule expressed, and hold that, in all such cases, the character in which a plaintiff sues must be determined by the cause of action he describes in his declaration, rather than the

descriptive words employed in the caption.—See Chapman v. Spence, 22 Ala. 588.

The original complaint which we are considering, discloses the representative character of the plaintiff, both in the caption, and in the body of the complaint. Hence we need not decide whether the same rule prevails now as formerly, or whether the caption, or marginal statement of the parties, is a part of the complaint. We defer its consideration, until it shall come before us.

It is here contended, that the amendment which was allowed in this case, was, in effect, the striking out of a sole party plaintiff, and inserting another. If this be the case, it was unauthorized by the Code, (§ 2403,) as decided by this court in Leaird v. Moore, 27 Ala. 326. Without intending to impair the force of that decision, we think the policy of our law, as disclosed in the Code, will not justify us in materially extending its principles. One object of the Code certainly was, to discourage technical objections, and to secure a trial on the merits of each controversy.—See §§ 2401-2-3-4-5.

The question here is different from the one presented in Leaird v. Moore. The name of the party plaintiff is not sought to be changed. The object of the amendment was to describe more definitely the character of the claim on which the plaintiff sued. The original complaint claimed as administrator; and under the liberal provisions of the Code above cited, we think the amendment was clearly permissible.

Adair, the special administrator, was, when offered, a competent witness. He had been superseded by the appointment of an administrator in chief; and under the order of the court, such administrator in chief had been substituted as the plaintff of record. Although the special administrator, while in office, was authorized to sue, (Code, § 1677,) yet his entire authority over the assets of the estate ceased when he was superseded; and it then became his duty to deliver to the rightful administrator, on demand, all the assets of the deceased that were in his hands. He had no right further to maintain the suit.— Code, §§ 1679, 1924. Adair, not being a party to the

record when he was offered as a witness, did not come within the provisions of the Code, §§ 2313–14.

In the case of Raiford v. Upson, 29 Ala. 188, we held, that an agreement by which one party received from another a family of slaves, (a part of whom were too small to labor, and others sickly,) to be boarded for their work, would constitute a valid contract of hiring, if entered into in good faith. That case would be an authority for holding, in the present suit, that the agreement under which appellant obtained the possession of the slave Nias, amounts to a contract of hiring, if any definite time had been agreed on. The agreement, however, being that Farrow should keep him until called for, and pay nothing for his hire, forbids that we should so hold. A possession, thus acquired, might, in the discretion of the owner, continue for one or for five years, or it might be terminated in one hour. We think this was not a contract, on which either party, before entering upon its performance, could have been sued for its breach. Like all other gratuitous promises, no right of action could arise from its non-observance.—Edwards on Bailments, 120–1; *ib.* 58.

If the property delivered in this case had been any other species of chattel, all would at once agree that it was that description of bailment called deposit, or *depositum.*—Edwards on Bailments, 35, 47. We cannot perceive from the terms of the agreement that the bailee stipulated to do more than keep the slave for the use of the bailor. He did not agree, so far as the evidence discloses, to do any act about the slave. True, he impliedly bound himself to feed him; but the same thing would be true if he had received any other animal on deposit.

It may be reasonably implied from the facts in this case that the bailee had the right to use and employ the slave Nias. This view is not at all inconsistent with the character of the bailment as a deposit. Such use is always permissible, where the consent of the depositor is actually given, or can be reasonably presumed from the circumstances.—Edwards on Bailments, 89.

As we have seen, an agreement to make or receive a deposit or mandate, is not a contract. It is without con-

sideration. It may be disregarded, or retracted by either party, so long as it remains purely executory. It is a mere power, revocable by either party; and the death of either, before performance is entered upon, operates a revocation.— Edwards on Bailments, 120. The agreement, however, assumes a new character as soon as the deposit or mandate is received. It then ceases to be a mere power, and becomes a contract.—Edwards on Bailments, 58, 109–10.

The slave Nias being placed with appellant as a deposit, and the gratuitous promise being then raised to the dignity of a contract, by part execution, the death of the bailor did not put an end to it, or convert the bailee into a wrong-doer. After demand made, he would have been liable to an action; till then, if the contract be correctly set forth in the bill of exceptions, he was not liable for hire.—Edwards on Bailments, 83.

The charge of the court, in reference to the slaves Jack and Ransom, is equally indefensible. Adair, the special administrator, hired to the appellant, at an agreed price, the slaves last named, *until an administrator in chief should be appointed.* He violated the contract, by taking away the slaves before the time of hiring expired. This defeats the plaintiff's right of recovery, unless the facts of this case exempt it from the operation of the rule.—Perry v. Hewlett, 5 Porter, 318 ; Petty v. Gayle, 25 Ala. 472.

It is contended that Adair, the special administrator, had no authority to make the contract he did in reference to the slaves Jack and Ransom ; and that therefore the appellant is liable for hire for the time he had their services. The answer to this is, that Adair cannot set up his own want of authority. He instituted the present suit, and it is only continued in the name of the administrator in chief. He is estopped from denying his own authority to make the contract.—Pistole v. Street, 5 Porter, 64 ; Fambro v. Gantt, 12 Ala. 298 ; Swink v. Snodgrass, 17 Ala. 653.

Whether the present administrator can maintain an action for the hire of Jack and Ransom, we do not now decide.

There is nothing in the argument, based on the fact that the parties, in making the contract last above considered, supposed an administrator with general powers would be appointed at the next regular term of the probate court of Russell, and that the appellant was not disturbed in the possession until after the next regular term of that court. The contract was, that Farrow was to have the slaves until after the appointment of an administrator in chief; and his possession was terminated without his consent, before the happening of that event.

The charge of the circuit judge was in conflict with this opinion; and for the errors pointed out, the judgment of the court below is reversed, and the cause remanded.

RICE, C. J., not sitting.