## ENGLISH'S EX'R *vs.* McNAIR'S ADMR'S.

[DETINUE FOR SLAVES AND OTHER PERSONAL PROPERTY.]

1. *Presumption in favor of affirmative charge.*—The appellate court will presume, unless the contrary is shown by the record, that a charge given by the primary court, on the effect of the evidence, (Code, §§ 2274, 2355,) was given on the written request of one of the parties.

2. *Validity of grant of administration to feme covert.*—Under the statutes of this State, (Code, §§ 1660, 1673, 1683,) as at common law, administration may be granted to a married woman, if her husband consent to her appointment ; and when the validity of her administration is collaterally assailed, her husband's consent will be presumed.

3. *Construction of special contract of bailment.*—An administratrix, who was the sole distributee of her intestate's estate, delivered certain slaves and other property belonging to the estate to her married daughter, and took from her and her husband a receipt containing the following provisions : " Said property to be used and employed by us " [the daughter and her husband] " for our sole use and benefit, but nevertheless to be subject to her order, and to be returned whenever she may make demand of us, until the day of final settlement of said estate. Without recourse to said property being rendered necessary in order to pay off the debts and claims against said estate, and when the rights of said M. M. G.," [the administratrix,] " as sole heir to said estate, shall accrue to her, she will substitute for this instrument such other conveyance as she may deem proper ; and in case of her death before the final settlement aforesaid, then her co-administrator, A. W. S., is expressly admitted to all her rights under this instrument, for the purpose of making a final settlement of said estate ; *provided, always,* that no clause in this instrument shall be so construed as to make us liable for the non-appearance of said property, if it is detained by death or accident." *Held,* that the contract evidenced by this receipt did not pass the title to the property from the administratrix, but constituted a mere bailment to her daughter and son-in-law, which was determinable on her demand at any time before the final settlement of the estate ; with a further stipulation on her part, that if recourse to the property should not be necessary for the payment of debts, she would, when her right to the estate as sole heir accrued, substitute for that instrument such other conveyance as she might deem proper.

4. *Estoppel against administrator by illegal bailment.*—If an administrator makes an illegal bailment of property belonging to his intestate's estate, he is estopped from setting up a title in avoidance of it ; but this principle does not prohibit him from recovering the property by suit after the termination of the bailment according to its terms.

5. *Damages.*—In detinue against an executor or administrator, damages may be recovered for his own illegal detention in his representative capacity, and for the previous illegal detention of his testator or intestate.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Ashley W. Spaight, as administrator, Mrs. Matilda M. George, as administratrix, and James George, the husband of said Matilda, as joint administrator in right of his wife, of Mrs. Letitia A. McNair, deceased, against the executor of Robt. J. English, deceased, to recover certain slaves and other personal property, together with damages for their detention. The only plea was the general issue, " with leave to give in evidence any matter which could be pleaded in bar;" and like leave to the plaintiffs to " give in evidence any matter which could be specially replied."

The material facts of the case, as stated in the bill of exceptions, are as follows: The slaves and other property sued for belonged to Mrs. McNair, plaintiffs' intestate, who died in Dallas county, Alabama, in August, 1853, leaving Mrs. Matilda M. George her sole distributee and heir-at-law. On the 5th September, 1853, letters of administration on the estate of said decedent were granted by the probate court of said county to A. W. Spaight and Mrs. Matilda M. George, the latter being at that time the wife of James George. These letters, as set out in the transcript, are in the usual form, and recite the fact that the decedent died in said county, leaving property therein; but they nowhere show that Mrs. George was then married. The property sued for "went into the possession of said plaintiffs, as such administrators, and remained in their possession until January, 1855," when Mrs. George, with the assent of Spaight, her co-administrator, delivered said property to Robert J. English (the defendant's testator) and his wife, and took from them a written instrument, or receipt, of which the following is a literal copy:

" Rec'd of Mrs. M. M. George as administratrix of the estate of L. A. McNair, deceased, the following, viz.: Patty, George, Sam, Nathan, David, Jane, Curtis, Maria, Albert and Lilly, and one mule, Nelly; *said property to*

*be used and employed by us for our sole use and benefit, but nevertheless to be held subject to her order, and to be returned whenever she may make demand of us until the day of final settlement of said estate without recourse to said property being rendered necessary in order to pay off the debts and claims against said estate, and when the rights of said M. M. George as sole heir to said estate shall accrue to her, she will substitute for this instrument such other conveyance as she may deem proper.* In case of her death before the final settlement aforesaid, then her co-administrator, A. W. Spaight, is expressly admitted to all her rights under this instrument for the purpose of making a final settlement of said estate. *Provided always,* that no clause in this instrument shall be so construed as to make us liable for the non-appearance of said property, if such property is detained by death or accident.

Georgia English,<br>R. J. English."

Under the construction of this instrument adopted by the court, the italicized portion of it should read thus: "*Said property to be used and employed by us for our sole use and benefit, but nevertheless to be held subject to her order, and to be returned whenever she may make demand of us, until the day of final settlement of said estate. Without recourse to said property being rendered necessary in order to pay off the debts and claims against said estate, and when the rights of said M. M. George, as sole heir to said estate, shall accrue to her, she will substitute for this instrument such other conveyance as she may deem proper.*"

Mrs. English died in the latter part of the year 1855, and her husband in the year 1857. In February, 1856, Mrs. George demanded the property of said English, but he refused to deliver it up, and held possession of it until his death; and after his death his executor, the defendant in this suit, continued in the possession up to the commencement of the suit. No final settlement of Mrs. McNair's estate was ever made by her said administrators. The value of the slaves, and of their hire during the detention, was proved. The suit was commenced after the lapse of six months from the defendant's appointment

as executor, and the claim was proved to have been duly presented to him.

"The court charged the jury, 'that if they believed the evidence, they must find a verdict for the plaintiffs;' to which charge the defendant excepted, and then requested the following written charges:

"'1. That if the jury believe the evidence, the plaintiffs are not entitled to recover in this action.'

"'2. That under the evidence the jury must find a verdict for the defendant.'

"'3. That if the plaintiffs are entitled to recover in this action, they can only recover the hire of the negroes from the demand proved to the death of the defendant's testator.'

"'4. That if the property sued for were delivered to the defendant's testator before the receipt executed by him and his wife was delivered to Mrs. George, then said receipt does not entitle the plaintiffs to recover in this action, although they may have had possession of, and title to the property, previous to the execution of said receipt.'

"'5. That if the jury find that said property went into the possession of the defendant's testator and his wife, and was to be held by them under said receipt executed by them, and was so held by them, then the plaintiffs are not entitled to recover in this action.'

"'6. That if A. W. Spaight and James George consented to the delivery of said property to the defendant's testator and his wife, upon their execution of the receipt read in evidence, to be held by them under the terms of said receipt, then the plaintiffs are not entitled to recover.'

"'7. That if the jury believe from the evidence that the defendant's testator held said property under said receipt, and that he so held it by the consent of the plaintiffs, then the plaintiffs are not entitled to recover in this action, if the jury further believe that no final settlement of the estate of Mrs. McNair has ever been made; and that it is not necessary to return said property to pay the debts of said estate.'"

These charges were severally refused by the court, and

to the refusal of each the defendant excepted; and he now assigns as error all the rulings of the court to which he reserved exceptions.

WM. M. BYRD, GEO. W. GAYLE, and JOHN T. MORGAN, for the appellant, made the following points:

1. The affirmative charge of the court, in favor of the plaintiff's right to recover, was erroneous, because the statute (Code, § 2355) does not authorize the court to give such a charge *ex mero motu*, but only on the written request of one of the parties; and for the further reason, that such a charge should never be given where there is the least conflict in the evidence.

2. The plaintiffs were not entitled to recover on the evidence, because the grant of administration to Spaight and Mrs. George was good only as to the former, and conferred no authority on the latter or her husband to administer on the estate. A married woman cannot, without the consent of her husband, take a grant of letters testamentary, or of administration.—Code, § 1673; 2 Bright on H. and W. 38, 40, 42; 1 *ib.* 40; 1 Salkeld, 282; 3 Curt. 50; Godolph. Pl. 2, C. 10, § 1; Walker v. Fenner, 28 Ala. 367. As to the construction of the word *may*, as used in section 1673 of the Code, see Gould v. Hays, 19 Ala. 462; *Ex parte* Simonton, 9 Porter, 395; *Ex parte* Banks, 28 Ala. 28.

3. If the plaintiffs had any right to the property as administrators, their disposition of it to English and wife, as shown by the evidence, was a violation of their trust, and precludes them from recovering the property.—Lawson v. Lay, 24 Ala. 184; Pistole v. Street, 5 Porter, 14; Fambro v. Gantt, 12 Ala. Rep. 298; Kavanaugh v. Thompson, 16 Ala. 818; Swink v. Snodgrass, 17 Ala. 653; Hopper v. Steele, 18 Ala. 184. Under the provisions of the Code, an administrator has no right to sell privately. Ikelheimer v. Chapman's Adm'rs, 32 Ala. 676.

4. If the plaintiffs had a right to make the disposition of the property shown by the evidence, such disposition, with the consent of the sole distributee of the estate, was an administration of the property; and under the con-

tract signed by English and wife, Mrs. George alone, or she and her husband, individually, could maintain an action for its recovery.—Pickens v. Oliver, 29 Ala. 528.

5. In detinue against an executor, in his official capacity, for property which was detained by his testator, damages cannot be recovered for the hire subsequent to the testator's death. The executor cannot, by detaining the property, charge the estate. To allow him to do so, would violate well-settled principles.

D. W. BAINE, and J. R. JOHN, *contra.*—1. The delivery of the property to the defendant's testator, as evidenced by the instrument called a receipt, was a mere loan at will. The receipt itself, not being executed by Mrs. George, cannot operate a transfer by her, nor does it purport to be a conveyance or transfer by her. If the defendant took anything by the delivery, he took it by a parol gift. But it is an essential element of every parol gift, that the absolute title must vest in the donee at the time of the delivery, and that the donor must part with all dominion and control over the property: such a gift cannot be made to take effect upon the happening of a contingency *in futuro.*—Stallings v. Finch, 25 Ala. 522; Miller v. Anderson, 4 Rich. Eq. 6; Allen v. Polerschy, 31 Maine, 338; Walden v. Dixon, 5 Monroe, 170. The receipt contains three distinct clauses, clearly indicating that Mrs. George retained the dominion and control of the property: 1st, the clause providing that the property "shall be held subject to her order;" 2d, the clause providing that it "shall be returned whenever she may make demand," "until the day of final settlement of said estate;" and, 3d, the clause providing that she will make such future conveyance as she may deem proper. If Mrs. George's right to regain the property depends, as is contended by the appellant's counsel, upon the contingency of a necessity for the property to pay debts, such a construction of the instrument would not aid the appellant.—Stallings v. Finch, 25 Ala. 522. But such a construction is not authorized by the terms of the instrument. Mrs. George's right to demand the possession is unquali-

fied, at least until the final settlement of the estate. The clause in reference to the existence of debts, requiring the property for their discharge, is not a part of the stipulation respecting Mrs. George's right of demand, but refers only to the stipulation respecting the execution of another conveyance by her. The general intention of the parties clearly appears from the entire instrument. Mrs. George holds a large property, as one of the administrators of an estate of which she is sole heir. She knows that, until the property is distributed to her, she has no right to give it to any one; but she intends, after her title as distributee accrues, to give it to her children. In the meantime, she and her co-administrators are willing to let her children have the use of the property; leaving the title in the estate, and reserving to the administrators the control over the property, with the right to retake the possession at any time before her title as sole heir accrues. This construction harmonizes every sentence in the instrument, and no other construction does.

2. This contract was not such an illegal act as will prevent a recovery of the property by the plaintiffs after the termination of the bailment. The Code of Alabama contains no express prohibition of loans or private sales by administrators, though his common-law right is taken away by necessary implication, and he has now no authority to loan or sell the property privately. But a mere want of authority, in one of the parties to a contract, is no defense to an action by him, if the other party has obtained all that he contracted for.—Terry v. Berghaus, 8 Porter, 500; Lampkin v. Reese, 7 Ala. 170; Tompkies v. Reynolds, 17 Ala. 117; Story on Bailments, § 159. To prevent the maintenance of an action on a contract, on account of its illegality, there must be some act *malum in se*, or in violation of some positive law. If this position be correct, the cases of Fambro v. Gantt, and Lay v. Lawson, which were governed by the act of 1809, are not applicable to this case. The maxim invoked by the appellant, *in pari delicto potior est conditio possidentis*, only applies where a party seeks to recover on an illegal contract, or seeks to avoid it by setting up its illegality.

Chitty on Contracts, 657; Snodgrass v. Cabiness, 15 Ala. 162. In this case, the plaintiffs do not seek to recover on the contract, and are not precluded by its terms. They sue on their title as administrators, a title which is.outside of the contract under which the defendant obtained possession. At the termination of the bailment by its terms, whatever illegality affected it during its continuance would cease. If an administrator unlawfully hires out a slave for a year, he certainly does not thereby forfeit the title to the property.

3. It is the settled law of Alabama, that the distributees of an estate may ratify and confirm an illegal sale by the administrator, and the same, when confirmed, is valid against the whole world.—Elliott v. Br. Bank at Mobile, 20 Ala. 346; Kavanaugh v. Thompson, 16 Ala. 817. Mrs. George was the sole heir and distributee of the estate, and must be presumed to have assented, as distributee, to her own act as administrator.

4. The defendant, having admitted by his contract the representative character of Mrs. George, is now estopped from denying it.—Harbin v. Levi, 6 Ala. 401; Browning v. Huff, 2 Bailey, 178.

5. The grant of administration to Mrs. George was not void on account of her coverture.—1 Wms. Ex'rs, 267, and note *l.* Although the law requires the husband's assent, this is a matter for the determination of the probate court alone, and its existence must be presumed.—Sims v. Boynton, 32 Ala. 353; Miller v. Jones, 26 Ala. 247; McGrew v. McGrew, 1 Stew. & P. 30; 4 Phil. Ev. 65; 1 Greenl. Ev. § 550. The provision of the Code, that administration *may* be granted to the husband when the wife is entitled to it, merely gives the court power to prefer him, but does not take away the common-law capacity of the wife.

6. The charge of the court, as to the executor's liability to damages, was correct.—Allen v. Harlan, 6 Leigh, 45; Catlett v. Russell, 6 Leigh, 361; Mansell v. Israel, 3 Bibb, 511; Brewer v. Strong, 10 Ala. 963.

7. The affirmative charge of the court, in favor of the plaintiffs' right to recover, must be presumed to have

been given on their written request, since the contrary is not affirmatively shown by the record.

A. J. WALKER, C. J.—Section 2274 of the Code prohibits the giving of a charge to the jury upon the effect of the testimony, unless the court is required to give such a charge by one of the parties. Section 2355 of the Code says, that "charges, moved for by either party, must be in writing." An affirmative charge, upon the effect of the entire evidence, in favor of the plaintiff, was given by the court below. It does not appear from the bill of exceptions whether that charge was or was not given upon the request of the plaintiff, nor, if given upon request, whether it was orally asked, or "*moved for*" in writing. The record being silent upon the subject, we must presume that the charge was given upon request in writing, or we must presume that it was given by the court *mero motu*, or, if requested, that it was not moved for in writing. The first of the above stated presumptions must be here adopted, because it is an established principle with appellate courts to presume the correctness of the proceedings of the court below, and not to impute error unless it is affirmatively shown by the record.

[2.] It is contended, that the administration of one of the plaintiffs, Mrs. George, is void, because she was a married woman at the time of her appointment. Coverture was not, at common law, a disqualification for the office of administratrix, if the husband consented to the appointment; and it seems that the husband's consent to the administration, when collaterally assailed, was presumed.—1 Wms. on Ex'rs, 369; *ib.* 190–191; 1 Lomax on Ex'rs, 167, marg. 68. It is not disclosed in this case in any way, whether Mrs. George's husband consented to her administration. Guided by the common law, and indulging its presumption, we should therefore determine in favor of the validity of the administration. But the influence of our statutory law upon the question is to be weighed, before we can attain a conclusion.

Section 1660 of the Code is in the following words: "No married woman is *entitled* to letters *testamentary*,

unless her husband consent thereto by a writing signed by him, and filed with the judge of probate; and by giving such consent, he becomes responsible for her acts, jointly with her." The words of this statute do not import the absolute disqualification and incapacity of a married woman to take the trust of an administration, except with the written and duly-filed consent of her husband. It says she is not "entitled." She has no claim, no right to be appointed. She is legally unfit for the office, unless the prescribed consent should be given and filed. Without such consent, her appointment was erroneous, and her administration would be revocable; yet it is not absolutely void. Her administration, like that of an infant or alien, might be at any time revoked by an appropriate proceeding; but, in the absence of such revocation, it is not to be deemed a nullity.—1 Wms. on Ex'rs, 489–490; 1 Lomax on Ex'rs, 356, marg. 195; Palmer v. Oakley, 2 Douglas, (Mich.) 433; Ray v. Doughty, 4 Blackf. 115; Savage v. Benham, 17 Ala. 126.

Our statute has but asserted a well-recognized principle of the common law, in requiring the husband's consent to his wife's administraton. It has only modified the common law, by requiring the consent to be given in writing, and filed in the court, and in making his responsibility a consequence of the written consent. The question of the validity of the wife's administration, when collaterally assailed, remains now, so far as we can perceive, as it was at common law. While the books leave the question of the manner in which the husband may treat his wife's administration, commenced during the coverture, in some obscurity and doubt, they are clear in maintaining the validity of her administration, when attacked by third persons, otherwise than by a direct proceeding for its vacation or revocation.—Wms. on Ex'rs, 190–191; Went. on Ex'rs, 377; 1 Lomax on Ex'rs, 147; Palmer v. Oakley, *supra.*

The statute, in its *letter*, includes only letters testamentary. The bill of exceptions leaves some room for doubt, whether the deceased did not leave a will, and whether the authority of the plaintiffs was not conferred by letters

testamentary. But it is not necessary for us to inquire, whether the spirit and intent of the statute does not bring letters of administration within its operation, or whether the plaintiffs' are letters testamentary, and therefore within the letter of the statute. For it results from what we have said, that the statute quoted would not make the authority of the feme plaintiff void, even though its applicability be conceded.

Section 1673 of the Code declares, that "when a married woman is entitled to the administration, it may be granted to her husband in her right." Whatever may be the effect of that section, in making the appointment of a married woman erroneous, or in giving the husband a right to stand in her place and claim the administration, it cannot be construed into the declaration of her absolute incompetency and incapacity to take the trust, or that her appointment when made is utterly void. It operates upon the right to the trust, and not upon the validity of the appointment.

The only other statute touching the question under consideration is section 1683 of the Code, which prescribes that "every person, appointed executor, administrator, or special administrator, except," &c., "must give bond, with at least two sufficient securities." The argument drawn from this section is, that a feme covert, being incompetent to contract, cannot execute the requisite bond, and consequently must be incompetent to take the office of administratrix. A reply to that argument, at least plausible and supported by respectable authority, is, that the giving of a bond is not a condition precedent to the appointment; that the administration in fact commences before the giving of the bond; that there might be a revocable, though valid administration, without a bond; and that therefore the question of the validity of the administration could not hinge upon the capacity to execute a bond.—Palmer v. Oakley, *supra;* Russell v. Coffin, 8 Pick. 143. We, however, neither affirm nor deny the correctness of the reasoning suggested, because we prefer to place our conclusion upon a different point.

The requisition that the administrator shall *give* bond

with sureties does not imply that he must necessarily and in all contingencies *execute* the bond. An administrator may literally comply with the law, by *giving* a bond with the necessary sureties, without executing it himself. A construction which required an administrator or executor to execute or sign the bond in every case, would render section 1660 nugatory, so far as it allows a married woman to be the representative of an estate, when her husband shall give his written consent and the same is properly filed.

The analogy of the decisions of this court, in reference to a kindred question, affords strong support to the conclusion, that there is no unbending rule requiring in all cases the execution of the bond by the administrator. Thus it has been decided, that a statute requiring a claimant in a trial of the right of property, or his attorney, to give bond with security, did not make it indispensable in every case that the bond should be executed by the claimant or his attorney.—Marrs v. Garrett, Minor, 406; Graham v. Lockhart, 8 Ala. 9; Strode v. Clark, 12 Ala. 621.

A similar question, upon a statute requiring the giving of a bond with security by a guardian, arose in Michigan; and it was held, that the execution of the bond by the guardian in every case was not indispensable, and that a married woman could qualify as guardian by giving a bond executed by others, and not by herself.—Palmer v. Oakley, *supra.* The same conclusion has been attained in England, in reference to similar statutes.—1 Bacon's Abr. 552, Bail in Civil Cases, B, 7; 2 Tidd's Prac. 1252; 8 East, 298.

Upon the reasoning and authorities presented above, we decide, that there is nothing in the statute which prohibits a married woman's qualification as administratrix by giving a bond executed by others, and consequently her incapacity to contract does not render her appointment void.

[3.] There is some obscurity in the instrument of writing given by English and wife to Mrs. George. The obscurity is increased by the want of punctuation, the

omission of capitals, and the probable want of words intended to be inserted. After a careful examination of it, and endeavoring to so punctuate and construe it as to allow effect to all the words, and to secure consistency among them, we understand it as constituting a bailment by the latter, as administratrix, to the former, and determinable upon the demand of Mrs. George at any time before the final settlement of the estate. We understand it also to contain an agreement, that if recourse to the property for the payment of claims against the estate should not be necessary, Mrs. George would, when her right as sole heir to the estate accrued to her, substitute for that instrument such other conveyance as she might deem proper. It also contains a clause giving to Mrs. George's co-administrator, A. W. Spaight, in the event of her death before a final settlement, all the rights of Mrs. George under the instrument for the purpose of making a final settlement, provided that English and wife should not be liable for the non-appearance of the property, if detained by death or accident. The correctness of our construction will be apparent to any one, who will look at the instrument and regard a period as inserted after the words " until the day of final settlement of said estate," and the succeeding words, " without recourse," &c. as commencing a new sentence, and the initial " w " as a capital.

[4.] This instrument did not vest English and wife with a title to the property, but constituted them bailees, and made the bailment determinable by a demand, which was made before the commencement of this suit. If this bailment was illegal, under the decisions of this court, the administrator would be estopped from setting up a title in avoidance of it.—Pistole v. Street, 5 Porter, 64 ; Swink v. Snodgrass, 17 Ala. 653 ; Kavanaugh v. Thompson, 16 Ala. 817 ; Lawson v. Lay, 24 Ala. 184 ; Fambro v. Gantt, 12 Ala. 298 ; Farrow v. Bragg, 30 Ala. 261 ; Easley v. Boyd, 12 Ala. 684. But this principle cannot be understood as estopping an administrator from recovering property, after the expiration of the bailment, in perfect accordance with its terms. It may be that a

recovery here could not be had during the bailment, or in contravention of it. But there is no principle of law or right, which prohibits an administrator, who has made an illegal bailment of property, from regaining the possession of the property after the termination of the bailment.

[5.] Where an executor or administrator unlawfully detains, in his representative capacity, personal property, which had been previously detained in a similar manner by the testator or intestate, damages for the detention by the representative, as well as by the deceased, may be recovered in an action against such representative. We content ourselves by referring to Brewer v. Strong, 10 Ala. 961, and the cases therein cited, which, we think, fully sustain the position.

The judgment of the court below is affirmed.